OCT 14 2025 9:52 A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**CINCINNATI DIVISION**

| | | |
|---|---|---|
| **MEDPRO GROUP INC. AND THE MEDICAL PROTECTIVE COMPANY, ET AL.** | : | **Case No. 1:25-cv-00630** |
| **Plaintiffs** | : | |
| **v.** | : | **ERIC DETERS' MOTION TO DISMISS BASED UPON OHIO'S UNIFORM PUBLIC EXPRESSION PROTECTION ACT** |
| **ERIC C. DETERS, ET AL** | : | |
| **Defendants** | : | |

I move to dismiss on this basis too. I did not seek anything stayed under the act. However, I do want the Complaint dismissed under SLAPP, Ohio Chapter 2747.

I, and my media company, Eric Deters Media, are covered under Ohio Chapter 2747 against lawsuits designed to silence my lawful exercise of free speech and participation in public issues.

Warren Buffett is a public figure. Medical Protective is an insurance company. Durrani was a federal indicted criminal. The entire matter is news which I have a right to speak out on, give opinions, report on and publicize. Medical Protective is taking my free speech and falsely calling it abuse of process, extortion, blackmail and defamation.

The MedPro Complaint against me is exactly what SLAPP is for.

I attach as **Exhibit 1** all the legal application of SLAPP Warren Buffett claims in Kenton Circuit Court. I ask the Ohio version of all his arguments be applied to me.

Respectfully submitted,

Eric Esquire Deters, Pro Se
5247 Madison Pike
Independence, KY 41051
eric@ericdeters.com

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(d) and other applicable law, I certify that on October 14, 2025, I filed the foregoing with the Clerk of Court, which will automatically send email notification of such filing to all counsel of record and parties who are deemed to have consented to electronic service.

Eric Esquire Deters, Pro Se

# EXHIBIT 1

**COMMONWEALTH OF KENTUCKY**
**KENTON CIRCUIT COURT**
**DIVISION IV**
**NO. 2025-CI-1761**

**ERIC E. DETERS** **PLAINTIFF**

**v.**

**WARREN BUFFETT and DEBBIE BOSANAK** **DEFENDANTS**

---

**DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND UPEPA MOTION TO DISMISS AND FOR ATTORNEY'S FEES**

---

## INTRODUCTION

This action, styled as one for defamation and related reputational torts, should be dismissed for lack of personal jurisdiction and under Kentucky's Uniform Public Expression Protection Act (UPEPA). The Court should also award Defendants their attorney's fees under the UPEPA.

The plaintiff is Eric Deters, a repeatedly disciplined attorney who has been suspended from practice in Kentucky since 2013. The Kentucky Supreme Court has called his approach to legal practice "anarchy." *Deters v. Ky. Bar Ass'n*, 627 S.W.3d 917, 928 (Ky. 2021). Deters is a notorious filer of frivolous and abusive litigations. *See, e.g.*, *Deters v. Hammer*, 568 F. Supp. 3d 883, 889 (S.D. Ohio 2021) (noting prior frivolous defamation suits). Just two days ago, he filed a 99-page complaint in the Southern District of Ohio against Judge Michael Barrett of that court; Chief Justice Sharon Kennedy, Justice Joseph Deters, and former Chief Justice Maureen O'Connor, all of the Ohio Supreme Court; and Ohio state legislator William Seitz, accusing them of conspiring to deprive him of a long-desired legal recovery. *See* Compl., *Deters v. Barrett*, No. 25-cv-640 (S.D. Ohio filed Sept. 3, 2025).

In this defamation action, Deters, proceeding *pro se*, accuses Warren Buffett and his executive secretary of conspiring to defame him in an oral or written communication to a talk show host in advance of Deters's being interviewed on that show. Deters had posted on the internet a picture image of Warren Buffett reading a book that Deters wrote; as the complaint admits, the image was an AI-generated fake. The supposed defamation is that when Mr. Buffett's executive secretary contacted the host of the talk show to complain about her guest posting deepfake images, she said that the image was posted "in connection with" the upcoming interview. Deters says this was defamatory because the picture was unconnected with the interview. From that, the complaint spins out four claims: defamation, false light, tortious interference with a media relationship (which is not a cause of action), and civil conspiracy.

The Court first of all lacks personal jurisdiction over either of the Nebraska-based Defendants, because the complaint fails to plead any facts connecting either the Defendants or the complained-of acts to Kentucky.

Moreover, the Court should dismiss Deters's claims under the UPEPA, a statute Kentucky's General Assembly recently enacted to deter baseless lawsuits, like this one, that seek to chill speech. When the UPEPA applies, it authorizes an expedited special motion to dismiss that places the burden on the plaintiff to come forward with evidence that establishes a prima facie case as to each element of his claim in order to stave off dismissal. It also provides for an award of attorney's fees when a defendant prevails on a UPEPA motion.

Deters's absurd claims—which concern an alleged false statement about whether or not an online post was in connection with a talk show appearance—present a classic case for UPEPA dismissal. Deters has not identified a defamatory statement, actual damages, or facts showing malice. His false light and "media relationship" tortious interference theories are either duplicative of his failed defamation claim, legally non-existent, or unsupported by any facts. And because every underlying tort fails, his civil conspiracy claim necessarily does too. The Court should therefore dismiss Deters's claims and award Defendants their attorney's fees.

## FACTUAL ALLEGATIONS[1]

For several years starting in the early 2010s, Deters served as plaintiffs' counsel in cases arising out of the medical misconduct of a Cincinnati surgeon, Abubakar Durrani, who was indicted for performing unnecessary surgeries. Since his suspension from legal practice in

[1] When deciding a UPEPA motion to dismiss, the Court is not limited just to the pleadings but instead may "consider the pleadings, the motion, any reply or response to the motion, and any evidence that could be considered in ruling on a motion for summary judgment." KRS 454.470. For the avoidance of doubt, Defendants do not concede as true any of the scant few facts alleged by Plaintiff in the complaint and reserve all rights to dispute them.

Kentucky, Deters has continued to publicly portray himself as the champion of the plaintiffs in those cases. *See generally* Compl., *Deters v. Barrett*, No. 25-cv-640 (S.D. Ohio filed Sept. 3, 2025). In 2022, Deters also published a book about Durrani entitled *The Butcher of Pakistan*.

Among the stratagems that Deters has employed over years of litigation has been an effort to (falsely) tie Warren Buffett into the narrative of the Durrani litigation. This case is a part of that effort. As the complaint alleges, at some point, Deters posted an image online that purported to show Mr. Buffett reading Deters's book about Durrani with text accusing Mr. Buffett of fraud against Durrani's victims. *See* Compl., Ex. 1. As the complaint also acknowledges, that image was not real: It was a fake image, generated by artificial intelligence to falsely suggest that Buffett read Deters's book and had been photographed doing so. *See* Compl. ¶¶ 6, 7.

The events of the complaint allegedly arise because Deters was set to appear on an online talk show, The Kimberly Guilfoyle Show, in late January 2025. At some point before that scheduled appearance, Deters alleges, Warren Buffett's executive secretary Debbie Bosanek[2] reached out to Ms. Guilfoyle about the fake image of Mr. Buffett that Deters had posted. *Id.* ¶¶ 6, 9. The complaint alleges that Ms. Bosanek told Ms. Guilfoyle that Deters had created and posted that fake image of Mr. Buffett "in connection with" the "promotion of his appearance on her show." *Id.* ¶ 6. After receiving the message from Ms. Bosanek, Ms. Guilfoyle allegedly asked Deters to take the post down, and he did, "reluctantly." *Id.* ¶ 7.

Deters proudly admits that the centerpiece of Ms. Bosanek's alleged statement is true: He made the image, it is an AI-generated fake, and he posted it. *See* Compl. ¶¶ 6-8 (admitting he took down the post) & Ex. 1. What he claims was defamatory in this alleged communication is merely Ms. Bosanek's alleged statement that the fake image was posted "in connection with" Deters's

[2] Deters misspells Ms. Bosanek's last name as "Bosanak."

appearance on The Kimberly Guilfoyle Show. Compl. ¶ 6. Deters claims that his posting the image "had nothing to do with" his appearance on the show and that it was defamatory to say that they were connected. *Id.* ¶ 8.

Deters went on to appear on Ms. Guilfoyle's show that afternoon to discuss the precise topic covered in the deepfake image, namely, the spurious—and, ironically, defamatory—allegations that Mr. Buffett was involved in fraud related to Durrani. *Compare* Compl., Ex. 1 (depicting Mr. Buffett reading Deters's book along with text accusing Mr. Buffett of fraud), *with* KIMBERLY GUILFOYLE, *Dismantling DEI Once and For All, Live with Tyler O'Neil & Eric Deters | Ep. 190* at 32:24-45, 40:46-41:32, 43:48-44:30 (Rumble, streamed Jan. 23, 2025, at 4:02 p.m. ET)[3] (referenced in the complaint at ¶ 5) (screenshot attached as Ex. C) (discussing the allegations in his book and stating, among other things: "Everyone needs to know that Warren Buffett … would rather these people die.").

## ARGUMENT

### I. The Defendants Are Not Subject to Personal Jurisdiction in Kentucky.

At the outset, the complaint should be dismissed because Defendants are not subject to personal jurisdiction in Kentucky. "When a lawsuit is filed in Kentucky against a non-resident defendant, the plaintiff carries the burden of establishing jurisdiction over the defendant," *Hinners v. Robey*, 336 S.W.3d 891, 895 (Ky. 2011), yet Deters has failed to allege any meaningful connection between Defendants and Kentucky. Both Defendants reside in Nebraska, defeating general jurisdiction, and the alleged defamatory statement was made to a Florida resident, defeating specific jurisdiction.

---

3 https://rumble.com/v6cnpev-dismantling-dei-once-and-for-all-live-with-tyler-oneill-and-eric-deters-ep..html (https://perma.cc/TH38-MD2H)

On a motion to dismiss, without an evidentiary hearing, the plaintiff must "establish[] with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Id.* (cleaned up).[4]

Deters does not carry his burden. An individual is subject to general personal jurisdiction in the state of his or her domicile. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Neither Mr. Buffett nor Ms. Bosanek is "domiciled" in Kentucky—they both reside in Nebraska, as the complaint acknowledges, Compl. ¶¶ 2-3—so the complaint on its face defeats general personal jurisdiction. *See Gunn v. Wild*, No. 22-5015, 2022 WL 18401276, at *2 (6th Cir. Sept. 13, 2022).

Specific personal jurisdiction, in turn, is "absent when the communication was not specifically directed at the forum state." *Blessing v. Chandrasekhar*, 988 F.3d 889, 905 (6th Cir. 2021); *see generally id.* at 903-07 (no jurisdiction over out-of-state speakers whose online posts were not "specifically target[ed]" at Kentucky readers or decisionmakers); *Carbone v. Kaal*, 140 F.4th 805, 809, 810-13 (6th Cir. 2025) (same); *see also Doe 1 v. Flores*, 661 S.W.3d 1, 5 (Ky. Ct. App. 2022) (citing *Blessing* with approval). The communication here was not directed at anyone in Kentucky.

Instead, the complaint alleges that the statement was made to Kimberly Guilfoyle, whose location Deters does not allege.[5] That is for good reason: Ms. Guilfoyle resides in Florida. *See* Ex. D, X (formerly Twitter), @kimguilfoyle, Profile (last visited Sept. 5, 2025) (listing Ms. Guilfoyle's location as "Florida, USA").[6] And, in any event, there is no allegation in the complaint,

---

[4] Because Kentucky's long-arm statute now makes personal jurisdiction in Kentucky co-extensive with the limits of due process under the U.S. Constitution, defendants focus on the due process requirements. *E.g.*, *Gilbert v. CSX Transp., Inc.*, 2025 WL 1934168, at *1 (E.D. Ky. July 14, 2025). All unpublished and foreign cases cited herein are attached as Ex. A hereto.

[5] The complaint also alleges that Ms. Bosanek made the statement "to several others," but never identifies these persons nor asserts that these "others" had any connection to Kentucky. Compl. ¶ 11.

[6] https://x.com/kimguilfoyle (https://perma.cc/Y4F6-TB2Y)

and no basis for the Court to infer, that she is or was based in Kentucky. Absent any particularized allegation that Defendants purposefully targeted a Kentucky listener with the purportedly defamatory statement, there is no basis upon which to exercise personal jurisdiction over either out-of-state Defendant. *Blessing*, 988 F.3d at 905 (reiterating longstanding holding that "personal jurisdiction is absent when the communication was not specifically directed at the forum state"). The complaint should be dismissed and Defendants' attorney's fees and costs awarded.

## II. Deters's Claims Should Be Dismissed Under the UPEPA.

### A. The UPEPA Imposes a Heightened Burden on Plaintiff Because His complaint Targets First Amendment-Protected Speech Regarding a Public Figure

Kentucky's General Assembly enacted the UPEPA to protect against meritless lawsuits that chill protected speech. Indeed, the statute itself states that it is to "be broadly construed and applied to protect the exercise of the right of freedom of speech and of the press, the right to assemble and petition, and the right of association, as guaranteed by the United States Constitution and the Constitution of Kentucky." 2022 ch. 233, § 11.

The UPEPA generally applies to a "cause[s] of action asserted against a person based on the person's ... exercise of the right of freedom of speech ... on a matter of public concern." KRS 454.462(1)(c). A "[m]atter of public concern" includes "a statement or activity regarding [a] public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity." KRS 454.460(4)(a).

When the UPEPA applies, the defendant can make "a special motion for expedited relief to dismiss the cause of action," KRS 454.464, which then triggers a stay, KRS 454.466. On such a motion, the defendant bears the initial burden to show that the UPEPA reaches the cause of action. *See* KRS 454.472(1)(a). But once the defendant does so, the burden shifts to the plaintiff to either show that an exception to the statute applies or to "establish a prima facie case as to each

essential element of the cause of action." KRS 454.472(1)(b)-(c)(1). If the plaintiff fails to carry this burden, then "the court *shall* dismiss with prejudice." KRS 454.472(1) (emphasis added). The statute additionally provides for dismissal for failure to state a claim and dismissal based on a summary judgment standard. *See* KRS 454.472(1)(c)(2).

The requirement to establish a prima facie case at the *outset* of a litigation significantly increases the burden on the plaintiff, compared to the "notice pleading" standard that typically applies at the motion to dismiss stage. *Cf. Deramos v. Anderson Cmtys., Inc.*, 709 S.W.3d 197, 202 (Ky. 2025) (noting under the typical standard a "court should not grant such a motion unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved" (cleaned up)).

By contrast, "a prima facie case" under the UPEPA is one which if "unrebutted or unexplained is sufficient to maintain the proposition, and warrant the conclusion to support which it has been introduced." *Davenport Extreme Pools & Spas, Inc. v. Mulflur*, 698 S.W.3d 140, 152 (Ky. Ct. App. 2024) (cleaned up). As explained by the official comments to the model form of the UPEPA (which Kentucky adopted), the prima facie case requirement requires the plaintiff to "*produce evidence* that, if believed, would satisfy each element of the challenged cause of action." Uniform Public Expression Protection Act, National Conference of Commissioners on Uniform State Laws (2020), § 7, cmt. 4 (emphasis added).[7] When deciding a UPEPA motion, "the court shall consider the pleadings, the motion, any reply or response to the motion, and any evidence that could be considered in ruling on a motion for summary judgment." KRS 454.470.

---

[7] https://medialaw.org/wp-content/uploads/2022/05/UPEPA-with-comments.pdf

Here, it is plain that Deters's claims fall within the UPEPA's ambit. They are each "based on" alleged speech—Ms. Bosanek's purported statement to Kimberly Guilfoyle. KRS 454.462(1)(c). And they arise from discussion of topics of "public concern," as that term is defined under the statute, because they concern "a statement or activity regarding [a] ... public figure." KRS 454.460(4)(a). Deters is a public figure. This Court is aware of and may take judicial notice of the fact that he is a perennial candidate for public office in Kentucky. He has run for governor and maintains a website advertising himself as a candidate for Congress. *See*, *e.g.*, Ex. E, Taylor Weiter, "Eric Deters, candidate for Kentucky governor, pleads guilty to charges connected to chasing nephew in truck," WCPO 9 Cincinnati (Mar. 8, 2023);[8] Ex. F, Website, Eric Deters for Kentucky (last visited Sept. 5, 2025).[9] Candidates for public office are the archetypical public figures. *See Monitor Patriot Co. v. Roy*, 401 U.S. 265, 271 (1971) ("publications concerning candidates must be accorded at least as much protection under the First and Fourteenth Amendments as those concerning occupants of public office"). In fact, on Deters's campaign Facebook page, on which he continues to post regularly, he literally describes himself as a "public figure." *See* Ex. G, Eric Deters for Kentucky and America, FACEBOOK (last visited September 5, 2025).[10] Further, the complaint itself pleads that the challenged communication concerned (i) the authenticity of an image of one of the most prominent business figures in the country, and (ii) Deters's forthcoming on-air discussion of his accusations about the Durrani litigation and Mr. Buffett. Those topics are matters of public concern.

---

[8] https://www.wcpo.com/news/northern-kentucky/eric-deters-candidate-for-kentucky-governor-pleads-guilty-to-charges-connected-to-chasing-nephew-in-truck (https://perma.cc/X5J3-HF7E)

[9] https://ericdetersforkentucky.com/ (https://perma.cc/AE8W-9YR3)

[10] https://www.facebook.com/detersforkentucky/

Deters is also at least a limited-purpose public figure related to the alleged statement here because he "voluntarily inject[ed] himself … into a particular public controversy," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974), by publishing a book on the controversy and by promoting and discussing its allegations on a national media program. "[L]ooking to the nature and extent of [his] participation in the particular controversy," *id.* at 352, Deters qualifies: Even putting aside all of his prior actions related to this controversy, the deepfake image at the heart of his complaint is about the controversy and the allegedly defamatory statement was made to a talk show host who had invited Deters to appear on her show to discuss that particular controversy. Thus, his own allegations show that he not only "play[s] a prominent role in the controversy," but also has "access to the channels of effective communication and hence a realistic opportunity to counteract false statements," like the very show he appeared on that day. *Street v. Nat'l Broadcasting Co.*, 645 F.2d 1227, 1234 (6th Cir. 1981) (cleaned up).

The alleged statement that forms the basis of each of Deters's claims therefore is one "regarding [a] … public figure" and thus qualifies for protection under the UPEPA. KRS 454.460(4)(a); *see also* KRS 454.462(1)(c). Furthermore, no conceivable exception to the UPEPA applies—the fact that Ms. Bosanek's alleged statement was made privately is of no moment. *See Davenport*, 698 S.W.3d at 155 ("Kentucky's protections encompass all speech and press, public or private, and in all forums, about matters of public concern.").

Accordingly, Deters must come forward with evidence to establish a prima facie case on each element for each of his claims. This will have to include, *inter alia*, competent evidence that the alleged statement was even made, competent evidence that it was false, and competent evidence of how Deters was harmed—in addition to other showings required to prove the elements of his claims. Although this is Deters's burden to make a prima facie case, it is clear even from

the face of his pleading that he cannot do so. Indeed, Deters does not even state a single claim for which relief may be granted. Deters's claims should be dismissed.[11]

**B. Deters's defamation claim fails because there is no defamatory statement, no damages, and no "actual malice."**

*1. No Defamatory Statement.* The defamation claim here fails on the merits, first, because the allegedly false statement itself is not defamatory. Defamatory language is "language that tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Williams v. Blackwell*, 487 S.W.3d 451, 454 (Ky. Ct. App. 2016) (cleaned up). A defamatory statement must also be one that "connotes an actual, objectively verifiable fact." *Flores*, 661 S.W.3d at 8 (cleaned up).

Whether language is capable of a defamatory meaning is an objective determination. *See Cromer v. Montgomery*, No. 2007-CA-2389-MR, 2009 WL 484999, at *9 (Ky. Ct. App. Feb. 27, 2009) ("It was for the trial court to determine whether the communication of which Cromer complains bore a particular meaning, and then to determine whether that particular meaning was defamatory ... Clearly, the trial court's determination that no complaint could lie in the matter *sub judice* indicates that the trial court associated no defamatory meaning to the words Cromer alleged Montgomery had spoken."); *see also* Restatement (Second) of Torts § 614(1)(b) ("The court determines ... whether th[e] meaning [of a communication] is defamatory."); *Sweeney & Co. v. Brown*, 60 S.W.2d 381, 384 (Ky. Ct. App. 1933) (affirming dismissal where the alleged defamatory "letter imputes nothing derogatory to Sweeney's reputation or character").

Deters cannot carry his burden to show that Ms. Bosanek's alleged statement is defamatory.

[11] At the outset, the claims against Mr. Buffett should be dismissed because Deters does not allege that Mr. Buffett has done anything at all. The closest Deters comes to any factual matter regarding Mr. Buffett is to note that Ms. Bosanek works for him, which alleges no conduct by Mr. Buffett and so does not create a basis for Mr. Buffett to be liable for anything.

First, the alleged assertion that a social media post about the subject of a talk show appearance was made "in connection with" promoting that talk show appearance, obviously does not tend to lower someone in the estimation of the community or deter others from associating with them, so it is not capable of carrying a defamatory meaning.

Second, Deters also failed to allege a statement that "connotes [an] actual, objectively verifiable fact[]." *Compuware Corp.*, 499 F.3d at 529; *see also Davenport*, 698 S.W.3d at 158 (where "there are no definitive means of proving whether [a] statement is true or false," it "cannot support an action for defamation" (cleaned up)). The alleged statement does contain *some* verifiable facts, such as the claim that Deters posted an image of Mr. Buffett and whether that image was an AI-generated fake. The problem for Deters is that, as he concedes, those statements are true. The only alleged falsity relates to the claim that the post was connected to Deters's appearance on Ms. Guilfoyle's talk show. But whether the post related to his appearance on the show, which was on the same topic, is self-evidently a defensible inference or characterization based on the alleged circumstances; even if Deters disagrees that they were "connect[ed]," that disagreement is "dependent on perspective." *See Sandmann v. New York Times Co.*, 78 F.4th 319, 332 (6th Cir. 2023) (holding that whether plaintiff subjectively "'decided' that he would not move aside and 'positioned himself' so that he 'stopped' Phillips are all dependent on perspective and are not 'susceptible' of being proven true or false under the circumstances"). The conclusion that the post and the show were "connect[ed]" is not verifiable, and thus not actionable.

*2. No Special Damages.* Even if the statement were defamatory, Deters cannot show (or even allege) damages. Damages can be shown in one of two ways on a defamation claim: through defamation *per se* and defamation *per quod*. Defamation *per se* means (for spoken words) only those statements that "impute crime, infectious disease, or unfitness to perform duties of office, or

tend to disinherit him," and (for written statements) those statements that "are false and tend to injure one in his reputation or to expose him to public hatred, contempt, scorn, obloquy, or shame." *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 795 (Ky. 2004) (cleaned up), *overruled on other grounds by Toler v. Süd-Chemie, Inc.*, 458 S.W.3d 276 (Ky. 2014). Stating that a social media post was "connect[ed]" to a talk show appearance does none of those things.

Thus, the statement could only possibly be considered defamatory *per quod*. But that requires alleging "special damages, *i.e.*, actual injury to reputation." *Id.*; *id.* at 794 ("Defamatory statements that are merely libelous or slanderous *per quod*, however, require proof of extrinsic facts or explanatory circumstances and special damages." (cleaned up)). But Deters does not even allege (nor could he) that his reputation was actually injured because he made an AI-generated image of Mr. Buffett "independent[ly]" rather than to "promot[e] the interview." Compl. ¶ 8.[12] Thus, Deters cannot make a prima facie case (or state a claim) for defamation.

*3. No Actual Malice Alleged.* Finally, as a public figure (both generally and for the purpose of the alleged statement), *see supra* § II.A, Deters is required to show (but cannot) Ms. Bosanek made the statement with "'actual malice,'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Thomas M. Cooley L. Sch. v. Kurzon Strauss, LLP*, 759 F.3d 522, 527 (6th Cir. 2014) (quoting *Herbert v. Lando*, 441 U.S. 153, 156 (1979)). Indeed, Deters does not even attempt to plead actual malice. *See Tah v. Global Witness Publ'g*, 991 F.3d

[12] Aside from special damages, Deters all but conceded that he has experienced no damage whatsoever by agreeing to stipulate that he will not seek more than $5,000.01 in this case. *See* Ex. B, Stipulation. Although a concession that minimal damages are alleged may be no bar for a plaintiff with an actual, good faith cause of action, in the case of Mr. Deters, it confirms his ongoing penchant for filing frivolous defamation claims. The allegations themselves prove the point: Deters claims to have been defamed because a third party accurately informed someone that he had published a fake image of Warren Buffett, which would have been useful in connection with his appearance on Ms. Guilfoyle's talk show.

231, 240 (D.C. Cir. 2021) ("Where, as here, plaintiffs qualify as public officials[,] the First Amendment requires that they also allege that the defamatory statement 'was made with actual malice.'" (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)).

Deters, however, does not even allege (nor could he show) that Ms. Bosanek *knew* the social media post was not connected to Deters's appearance on the show or that she "entertained serious doubts" about the connection. *Bichler v. Union Bank & Tr. Co. of Grand Rapids*, 745 F.2d 1006, 1015 (6th Cir. 1984) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). How could he? In his AI-generated social media post, Mr. Buffett is shown reading Deters's book *The Butcher of Pakistan* and is accused of "commit[ing] fraud against" victims of medical malpractice, *see* Compl., Ex. 1, and in the show, Deters discussed *The Butcher of Pakistan*, connected Mr. Buffett to alleged fraud, and accused him of hoping the victims would die. Ex. C, KIMBERLY GUILFOYLE, *Dismantling DEI Once and For All, Live with Tyler O'Neil & Eric Deters | Ep. 190* at 32:24-45, 40:46-41:32, 43:48-44:30 (Rumble, streamed Jan. 23, 2025, at 4:02 p.m. ET). Considering the image attached to the complaint and the talk show appearance referenced in the complaint side-by-side, it is plain that the two were connected in some way. That is likely why Deters did not allege (though he must to state a claim) that Ms. Bosanek *knew* her alleged statement was false or entertained *serious doubts* about it. For that reason as well, Deters cannot make a prima facie case (or even state a claim) for defamation.

**C. Deters's false light claim fails.**

To succeed on a claim for false light, a plaintiff has to show: "(1) the false light in which the other was placed would be *highly offensive* to a reasonable person, and (2) the publisher had knowledge of, or acted in reckless disregard as to the falsity of the *publicized matter* and the false light in which the other was placed." *McCall v. Courier-J. & Louisville Times Co.*, 623 S.W.2d 882, 888 (Ky. 1981) (citing Restatement (Second) of Torts, § 652E (1976)) (emphasis added).

As with defamation, whether the alleged falsehood is capable of being construed as "highly offensive" is a question for the Court. *See, e.g.*, *Cheatham v. Paisano Publications*, 891 F. Supp. 381, 385 (W.D. Ky. 1995) (rejecting false light claim because statements were "unoffensive"). Claims that have been deemed highly offensive have involved extreme reputation-harming statements, for example, allegations that an attorney "intended to 'fix' a case or bribe a judge." *McCall*, 623 S.W.2d at 888. Here, the statement that an internet posting was made in "connection" with an upcoming internet interview on the same topic as that internet posting is not highly offensive as a matter of law, so the false light claim fails. Deters's false light claim also fails because, as with defamation, Deters has to show that Ms. Bosanek "had knowledge of, or acted in reckless disregard as to the falsity" of her statement, and he has not even alleged that (nor could he do so). *See supra* § II.B. Deters also fails to explain the false light in which the statement depicted him (perhaps, that he's someone who promotes his appearances on talk shows?). These reasons are each individually enough to dismiss this claim under the UPEPA.

But his false light claim fails at the threshold for another reason: He cannot show that the statement was "publicized." *McCall*, 623 S.W.2d at 887-88 (false light requires a "publicized matter"). "Unlike a defamation claim, which can be based on a single communication to one individual, the essence of a false-light claim is that it results in creation of a false *public* image of the plaintiff." *Stewart v. Pantry, Inc.*, 715 F. Supp. 1361, 1369 (W.D. Ky. 1988) (emphasis added); *see also* Restatement (Second) Torts § 652D ("'Publicity' … means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge.").

Here, in fact, because Deters has alleged that the communication was a direct, interpersonal communication to the talk show host, he has affirmatively alleged that it was *not* publicized.

Compl. ¶ 6. Telling one person does not, as a matter of law, count as "plac[ing] [the statement] before the public." *McCall*, 623 S.W.2d at 888 n.9; Restatement (Second) Torts § 652D (explaining that there is no tort where the statement is made "to a single person or even to a small group of persons").[13] Deters does not allege otherwise.

**D. Deters's intentional interference with a "media relationship" claim fails.**

Deters fares no better in attempting to repackage his purported grievance as a claim for tortious interference with a "media relationship." No such claim exists under Kentucky law (or the law of any other state). Kentucky does recognize a claim for "tortious interference with a prospective business advantage," but the six elements of such a claim are not present here:

> (1) [t]he existence of a valid business relationship or expectancy; (2) Defendant's awareness of the relationship or expectancy; (3) Defendant interfered intentionally; (4) [t]he motive behind the interference was improper; (5) [c]ausation; and (6) [s]pecial damages.

*Davenport*, 698 S.W.3d at 155-56 (citing *Snow Pallet, Inc. v. Monticello Banking Co.*, 367 S.W.3d 1, 6 (Ky. Ct. App. 2012)); *see also Miles Farm Supply, LLC v. Helena Chem. Co.*, 595 F.3d 663, 668 (6th Cir. 2010) (to succeed on a tortious interference with prospective business claim, a plaintiff must "(1) identify a prospective contractual relation (2) that the defendant interfered with (3) through significantly wrongful conduct." (cleaned up)).

First, Deters cannot show (nor does he even allege) any "valid business relationship or expectancy," but instead claims that he was to be interviewed on an online talk show. *Davenport*, 698 S.W.3d at 156. Deters concedes the lack of a valid business relationship by alleging only that

---

[13] Deters's conclusory allegation that Ms. Bosanek made the statement "to several others in addition to Kimberly Guilfoyle," Compl. ¶ 11, lacks any indication that it can be proven with competent evidence and is not even sufficiently pled to be credited. And regardless, it does not change the analysis: even if the statement were made to a few others, that still does not satisfy the requirement to plead that the statement created a false *public* image of Deters.

his "media" relationship was targeted. Compl. ¶ 18; *see Andress v. Gannett Satellite Info. Network, Inc.*, 2010 WL 3909525, at *3 (E.D. Ky. Sept. 30, 2010) ("A valid business expectancy exists when there is a reasonable likelihood or a probability, not mere wishful thinking that a *business* relationship will come about." (emphasis added) (cleaned up)).

Second, Deters cannot show (and does not allege) that the Defendants "intentionally interfered" and "that the motive behind the interference was improper." *Davenport*, 698 S.W.3d at 156. Under this element, "[t]he key question is whether the defendant has a valid reason for taking the challenged action." *In re Hill*, 957 F.3d 704, 713-14 (6th Cir. 2020) (cleaned up). That is, "if the defendant had a legitimate reason for doing what he did, the simultaneous existence of an improper motive, such as spite or a desire to cause the plaintiff harm, will not generally result in the defendant's liability." *Id.* Here, as discussed above, Deters does not allege that Ms. Bosanek knowingly made any false statements or indeed allege any facts about the circumstances that led Ms. Bosanek to allegedly call Ms. Guilfoyle. Thus, Deters never alleges that Ms. Bosanek "had no legitimate reason at all" for her actions. *Id.* Nor could he allege that, since it is self-evidently proper for Mr. Buffett's executive secretary to correct the record and inform interested persons when images posted on the internet are AI-generated deepfakes.

Third, as with defamation, Deters cannot show (and again, does not even allege) "special damages," which in this context "are essentially pecuniary damages." *Acuity Brands, Inc. v. Bickley*, 172 F. Supp. 3d 971, 992 (E.D. Ky. 2016) (cleaned up). In fact, Deters does not even claim that his appearance on Ms. Guilfoyle's show was scuttled, because it wasn't. *See* Compl. ¶ 19 (alleging only that the "intent" was to have the "interview canceled"). At most, he alleges that he was encouraged by Ms. Guilfoyle to take down a social media post (Compl. ¶ 7), which would not qualify as pecuniary harm in any case and certainly does not when the image at issue is a fake.

*See Donan Eng'g Co. v. Heinen*, 2022 WL 1274398, at *3 (W.D. Ky. Apr. 28, 2022) (dismissing claim "when the third party and the claimant's relationship had not been harmed or discontinued"). Indeed, Deters does not claim that Ms. Bosanek asked Ms. Guilfoyle to do anything. He merely alleges that Ms. Bosanek informed Ms. Guilfoyle that the image was an AI-generated fake and that it was posted to the internet in connection with Deters's appearance on Ms. Guilfoyle's show. Deters also does not allege that Ms. Guilfoyle conditioned Deters's appearance on her show on taking down the AI-generated false image.

Deters's tortious interference claim should be dismissed.

### E. Deters's civil conspiracy claim fails.

Finally, Deters also asserts a claim for civil conspiracy, which requires "an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. Ct. App. 2002). Deters cannot show either of these elements. First, Deters does not allege any "combination or agreement" between Mr. Buffett and Ms. Bosanek, much less one that is "unlawful/corrupt." *Id.* He merely asserts, without any factual support that they "acted in concert as a conspiracy against Eric Deters." Compl. ¶ 21. Second, for the reasons discussed above, because Deters cannot show (or allege) an unlawful act—*i.e.*, "an underlying tort," his claim must be dismissed. *Watts v. Lyon County Ambulance Serv.*, 23 F. Supp. 3d 792, 811 (W.D. Ky. 2014); *see also Mosley v. Arch Specialty Ins. Co.*, 626 S.W.3d 579, 594 (Ky. 2021) (affirming dismissal of civil conspiracy claim because the plaintiff's "civil-conspiracy claim is predicated on her ability properly to assert [underlying tort] claims, which she has failed to do").

## III. Defendants Are Automatically Entitled to Attorney's Fees.

Finally, because the UPEPA applies here, the Court must award Defendants' attorney's fees. *See* KRS 454.478 ("On a motion under KRS 454.464 … the court shall award court costs,

reasonable attorney's fees, and reasonable litigation expenses related to the motion ... [t]o the moving party if the moving party prevails on the motion."). As the official UPEPA comments explain, "[t]he mandatory nature of the relief provided for by this [fee-shifting] section is integral" to the UPEPA's scheme to protect and vindicate the Constitution's critical First Amendment protections. Uniform Public Expression Protection Act, National Conference of Commissioners on Uniform State Laws (2020), § 10, cmt. 1.

> Without the prospect of having to financially reimburse a successful moving party, ... plaintiffs will be able to file their frivolous suits ... with impunity, knowing that, at worst, their claims will only be dismissed. But because moving parties would be financially responsible for the expense of obtaining that dismissal, the effect of the abusive cause of action is nevertheless achieved.

*Id.* In other words, the fee-shifting provision is key to effecting the UPEPA's goal of deterring harassing actions that chill speech.

Moreover, although the UPEPA leaves no discretion for the court, *see Johnson v. Kearney*, 716 S.W.3d 227, 232-33 (Ky. Ct. App. 2025) (reversing denial of fee award), it is worth noting that this is an especially appropriate case for fees. This unfounded case is part of Deters's longstanding abuse of the litigation process. Not even suspension from the practice of law in Kentucky or sanction has been enough to deter him from wasting the time of judges and lawyers across the country. Indeed, just this week, after being sued in a separate action, Deters bragged online that "I've never had to pay a nickel to someone who has ever sued me." Ex. H, Video, Eric Deters for Kentucky and America, FACEBOOK, at 11:05 (last visited Sept. 5, 2025).[14]

---

[14] https://www.facebook.com/watch/?v=1343089840753531&vanity=detersforkentucky&http_ref=eyJ0cyI6MTc1NjkyOTcyMjAwMCwiciI6Imh0dHBzOl-wvXC93d3cuZ29vZ2xlLmNvbVwvIn0%3D

In other words, Deters is flaunting the financial "impunity" with which he's operated. *See* Uniform Public Expression Protection Act, National Conference of Commissioners on Uniform State Laws (2020), § 10, cmt. 1. That should end with this case: If Deters's abusive tactics against all of his perceived antagonists—Defendants, the bar, lawmakers, the judiciary itself—are ever going to be deterred, it has become clear that there must be genuine consequences to his actions. Not every litigant has the resources to stand up to his bullying tactics. But in this case he has provoked an adversary who will hold him to account, and who seeks to vindicate the interests of the justice system and our constitutional order by garnering the full penalty against him that the Kentucky legislature has not only authorized, but required. The Court should award Defendants their attorney's fees.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the complaint for lack of personal jurisdiction and dismiss the complaint with prejudice under the UPEPA, awarding fees, costs and expenses pursuant to UPEPA's mandatory attorney's fees provision.

## NOTICE OF HEARING

Please take notice that this Motion shall come on for hearing before this Court on September 22, 2025 at 9:00 a.m. EST or as soon thereafter as counsel may be heard.

Dated: September 5, 2025

Respectfully submitted,

***/s/ Mindy G. Barfield***

Mindy Barfield
Kyle R. Bunnell
DINSMORE & SHOHL LLP
City Center
100 West Main Street
Suite 900
Lexington, KY 40507

mindy.barfield@dinsmore.com
kyle.bunnell@dinsmore.com

Christopher M. Egleson
(*pro hac vice* forthcoming)
SIDLEY AUSTIN LLP
1001 Page Mill Road, Building 1
Palo Alto, CA 94304
cegleson@sidley.com

Christina Prusak Chianese
(*pro hac vice* forthcoming)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
cchianese@sidley.com

*Attorneys for Defendants Warren Buffett and Debbie Bosanek*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2025, I filed the foregoing motion to dismiss using the Kentucky Court of Justice KYeCourts electronic filing system.

Because Plaintiff Eric E. Deters is proceeding *pro se* and is not registered in the electronic filing system, I further certify that I served a true and correct copy of the foregoing by depositing it in the United States mail, first-class postage prepaid, and by electronic mail, addressed as follows:

Eric E. Deters
5247 Madison Pike
Independence, KY 41051
eric@ericdeters.com

***/s/ Mindy G. Barfield***

Mindy Barfield
*Attorneys for Defendants Warren Buffett and Debbie Bosanek*